Good morning, Your Honors. Nicolette Glaser appearing on behalf of Mr. Osorio-Molino, I respectfully ask for the opportunity to reserve four minutes of my time for rebuttal. Okay. Keep your eye on the clock. It counts down. May it please the Court, Mr. Osorio-Molino comes to this Court a resident of the United States since 1984 haunted by the interplay of gusts of immigration amendments passed. Mr. Molino stands convicted of a conviction. He has a conviction under 1135-2 of the California Code. That's the only conviction that has been discussed by either the immigration judge or the Board of Immigration Appeal. Clearly, Mr. Molino was not ever charged as an aggravated felon nor can be charged as such. However, the agency determined that Mr. Osorio-Molino is prohibited from seeking and obtaining relief in the form of asylum and withholding of removal because the Board finds that under a modified categorical approach, his conviction under 1135-2 constitutes an aggravated felony, thereby applying a rebuttable presumption the Board established in matter of QTMT. If we were to apply the analysis that the Supreme Court tells us in de camps to apply, was the modified categorical approach properly applied here? Your Honor, I do not believe it was properly applied. First, I would respectfully point that in this particular case, the immigration judge never considered the issue. The Board never adopted any findings of the immigration judge. In fact, for the first time in 2010, the BIA took the issue of the categorical approach. Now, what's particularly relevant, I believe, Your Honor, is in this particular case, we have a plea agreement that specifies, in the words of Mr. Molino, and he states that in a period of time of less than one month, he helped another two individuals sell cocaine by storing the cocaine. So the question here, Your Honor, is whether under this modified approach that the Supreme Court requires, is this a plea to a principal distribution of cocaine? I respectfully submit that under the California Doctrine of Informal Amendment to the Pleading, establishing people v. Miles, what we have here is an aider and abater plea that has been put in the record and is categorically present. But in any event, did he actually, is there anything that the statute covers matters that are not, in fact, part of the categorical crime, including transportation, for example? That is correct. Is it clear on the record that he wasn't pleading to transportation? Well, that's, Your Honor, it's not clear because there is nothing in the record to address any of the typical trafficking element. First, there is no knowledge that the Supreme Court in Rosamond mentioned is necessary under 924C, which kind of wraps up into the definition under the ADEPA. And also, there is nothing suggesting that Mr. Molino intelligently knew what was happening, that he received any remuneration, and that he did anything other than store. Now, the BIA never really addressed that. But even with regard to storage or anything he did, that you're just getting that from the plea agreement, but as to what he was convicted of, what do we know? We, the record is not clear, Your Honor. It really, there is very little in the record to really guide the BIA in its informed application of the modified approach. And the board really did not do that. And it appears that the reason for that is that it found that because Mr. Molino did not contest the charge or because he was never charged as removable as an aggravated felon, it didn't really clarify what it was doing. However, I believe that the issue is very relevant because although he was not charged as an aggravated felon, really the reason why he was prohibited or predetermined from seeking relief hinges on whether the aggravated felony has been established. And again, I don't believe that there is anything in the record, in the BIA's decision, that suggests what allows them not to apply the typical rules of the modified approach, simply because we are dealing with an application for relief. And again, there was no factual finding. The board is not permitted to make factual findings, and that's another issue. The whole question of whether this was an aggravated felony only arose at the end of these 25 years before the BIA. That is correct, Your Honor. Right? That is correct. So your client never really discussed that question before the BIA, but the BIA did decide it. That is correct, Your Honor. But for exhaustion purposes, it was decided. Well, I respectfully submit, Your Honor, that based on this Court's precedent that has said that when the BIA take upon an issue and rules on it, as it is in this case, exhaustion really has – the reason for exhaustion has been served, because the reason for exhaustion is to place the agency on notice of an issue on which they can apply their expertise and reach a conclusion so that it permits the Court to review that conclusion. Do you know the respective timing of the BIA's decision in this case and the Supreme Court's decision in de camp? I believe, Your Honor, that the decision of the BIA is March 20, 2012. They did not mention it, did not – I think de camp is later. I – Meaning if there is a failure to exhaust a de camp argument strikes me as that failure should be forgiven because the case hadn't been decided yet. That is correct. And I believe that de camp will come after that. It was not briefed by either side before this Court either. But I think – I mean, I think this is particularly unusual in the fact that the BIA remanded the case after 17 years specifically for the IJ to determine how the multiple changes both on the statutory level and in adjudicative decision have impacted this case because it's really unusual because it's a case that started in 1988. Do you have any idea why that happened? I understand that it was vacated or the case was administratively closed because of special provisions with regard to El Salvador. Correct. But then what happened? It just went into a black hole? Well, it was held in abeyance or administratively closed until 2006, the end of 2006. At that time, the DHS made a motion to recalendar since the – Just because somebody found it lying around the files? Do we have any idea what happened? Your Honor, I believe it's not fully in the record. But what appears to have happened is Mr. Molino exhausted his available relief in the form of applying probably for the ABC settlement, the temporary protective status. And also there's indication that he filed for adjustment of status. But even that was a long time before. I think some of the ABC case continued to uphold. There was several times that the settlement agreement was changed, certain cases. And there's nothing in the record anywhere of any later conviction? No, there is not. Actually, the record is quite clear. He has a DOJ record that shows that based on his fingerprint and also based on the FBI fingerprint, he had never had another conviction since that time. And I think that ties into an issue of – that was raised specifically is the application of Maduro-Frentenesco. Because if Maduro-Frentenesco applies, as he should apply in this case, then one of the factors that was supposed to be determined is whether the individual poses a danger to society. And that is at the time of the application. That would have been the IJ decision in 2010. Well, yeah, but it can't – I mean, a particularly serious crime is about the crime. It's not about his later record. Correct, Your Honor. Under Maduro-Frentenesco, the 1982 decision that should be applicable to this case, there was a factual-based analysis – Your Honor, I'm out of time. No, go ahead. Answer the question. We'll make sure you get a chance to respond. Thank you, Your Honor. Under Maduro-Frentenesco, which is a 1982 decision, the board has said that there is no rebuttable presumption. Rather, the particular serious crime is determined in establishing and reviewing the facts. And there are four factors that are required to be examined. The nature of the conviction, the facts underlying the conviction, the nature of the sentence, and whether the individual has rehabilitated and is a danger to society. So clearly, that particular framework is very different than the framework that the BIA announced in 1996. However, as this Court made clear in Miguel Miguel, such an impermissible, retroactive, adjudicative rule should not be applicable to individuals like Mr. Osorio Molina. Okay. You've now saved 13 seconds. But don't be concerned. We'll give you a chance to respond to the government. Thank you very much, Your Honor. Thank you. I please the Court. Tim Ramnitz on behalf of the United States Attorney General. Letter E, Lynch. This immigration case, Petitioner Mr. Juan Osorio Molina challenges two issues before this Court in his opening brief. One, whether there was an abuse of discretion when the IJ denied the continuance. And two, whether or not the board should have applied the matter of Francesco and the matter of Wael in this particularly serious crime calculus. Okay. But to some degree, the world has moved on between de Camp and Marcia Acosta and other cases. And there was a 28-J letter submitted, was there not, that did discuss the categorical approach to some degree. You mean Petitioner's motion to remand? Yes. Yes. I'm characterizing as 28-J. Yes. Yeah. At that point, they did discuss the categorical approach. And the board reaches the categorical approach and modified it in their decision. So there's not an exhaustion problem. I would say at this point, it's not an exhaustion problem. And I mean, I start from the premise that it is somewhat disturbing to have someone who was allowed to stay in this country for 25 years and all of a sudden we're trying to remove him on a 25-year-old conviction, which seems to have major problems under current law, whatever may have been true earlier. So it seems to me that's where you should direct your attention, i.e., what about the modified categorical approach? About what happened in the interim, what took so long? No. Well, yeah, I'd be curious about that. I inquired with USCIS and they stated his application for TPS was denied around 1994. And after that, they have no records until it was recalendered or a motion to recalendar was filed by DHS in 2006. So I don't know what happened in the interim. However, at the time when he was in initial proceedings, this is in 1990, even back then he was categorically barred from asylum with holding of deportation because of his conviction for an aggravated felony in September 1988. So that's the question. By current standards, was he in fact convicted of an aggravated felony? Was it officially proven that he was convicted of an aggravated felony? First of all, there's a question of the divisibility of the statute, which is arising in other of the cases on this calendar, under engine. And second of all, there's the question of the application of the modified categorical approach. This particular statute, which is California Health and Safety 11351, which was considered by this court in the United States. But not on this issue, not on the question of transportation versus sale. But it was found to be a divisible statute. But not on that issue. As to the drugs, but not as to the various ways you can commit it. And we do have other cases on this calendar that raise that issue. Well, yes, the Board did not have the benefit of discounts at the time of its decision. So if there is a further question of divisibility, perhaps a remand would be warranted so the Board could consider discounts. And not only discounts, but later cases after discounts. Rendon, but also Marcia Acosta, which is a recent case of this court, and so on. So this is my ultimate question. What would you think about mediating this case? Given the 25 years, which in some respect is attributable to the government. I mean, if they let somebody, I know there's no latches against the government, but essentially, this man married, had kids, lived his life, and then all of a sudden never did anything wrong again. And then all of a sudden the DHS shows up again. Yes, and I inquired with DHS as to prosecutorial discretion when the court sent their notice in February 2015, inquiring about the President's Executive Order. And they declined to exercise prosecutorial discretion at that point. Well, I'm not suggesting, I understand that the President's Executive Order doesn't deal with criminal, people with criminal problems. So I assume that's why they wouldn't exercise in that box. But given everything that we've discussed today, doesn't it make sense to mediate this case? We could mediate it if I could ask them again. The first time they simply replied to me saying he constitutes a priority removal. I understand that, but that's a different question from the questions we're raising now. And when you say ask again, you would be asking a different question. You would not be asking, would you exercise prosecutorial discretion? You would be asking, the court has requested us to mediate. Are you willing to mediate? We're always willing to mediate and to go back to the agency and make another request. I believe when I made this initial request, I did. So besides prosecutorial discretion, I'm asking for what would be available to them. What I'm saying is I'm not asking, I assume that question was rejected because he was in a priority group, right, because he had a criminal conviction. But the problem here is there are questions about this criminal conviction, which we're now discussing, and which you already said may well merit a remand to the agency. So could we cut through it by trying to mediate it first? I could always ask them and we could always put in a mediation and I can get their opinion on the other factors in this case. For what it's worth, I think you've got a serious decamp problem with this conviction. With this transportation statute? Yes, I think so, yeah. In my view, if it goes back, I think the BIA or the IJ, they have no choice, if they apply decamp in terms of what it currently means, to say that this is not an aggravated felony because you can't apply the modified categorical to it. I think there's one more point worth noting, not particularly to the modified categorical approach, but the Board also adds that even if this was not an aggravated felony case, it would nonetheless find his crime to be particularly serious. That if they weren't applying this definition of aggravated felony, they nonetheless, this is what the IJ did back in December 1990, he looked at the factors of the case and he stated that under 9th Circuit law at the time, which was Mahaney v. INS, that drug trafficking crimes would be considered particularly serious. And so even if you removed all the aggravated felony definition and application of the modified categorical approach, I think the Board would reach the same conclusion in this case. He is ineligible for asylum and withholding of deportation. Maybe. Sometimes a judge or a panel of judges or the BIA, once they've given you the belt, they'll give you the suspenders, but without the belt, maybe they won't give you the suspenders. It's a psychological question and I can't prejudge it, but it may be they were just tossing that in once they had found that it was an aggravated felony. I don't know. Otherwise, I was prepared to discuss the statutory applicability to his conviction, but it seems the Court is concerned. It's not concerned with the categorical bars to aggravated felony grounds, if it was held up to be an aggravated felony, I suppose. These 1158D, matter of QTMT, and why the Board properly applied those bars to his conviction, as opposed to applying matter of Francesco. That goes to particularly serious, not to aggravated felony, right? Well, they found, the Board found in its latest opinion, that he was categorically barred from these asylum and withholding deportation because he had an aggravated felony. An aggravated felony constitutes a particularly serious crime. Well, I thought it doesn't, for purposes of necessarily, not with regard to withholding. Withholding a deportation, not necessarily, the ADPA did walk that back. Initially, when he was in initial proceedings, he was categorically barred from withholding as well under the IMACT. Well, yes, his proceedings were ongoing. He presumably has committed a particularly serious crime under matter of QTMT. Presumably, but not categorically. Not categorically, and the Board just found he did not rebut those findings with an unusual circumstance of his case. And the 25 years are an unusual circumstance. They found to not outweigh the seriousness of the crime. As we noted in our brief, there is a criminal review bar applicable to this petition for review, 1252A2C, because he was ordered removed as an alien convicted of a controlled substance offense. And therefore, a court can only review constitutional claims and questions of law under 1252A2D. And reviewing such weighing of the factors in this matter of QTMT analysis, we precluded from the court's review under the criminal review bar. When is our case law about that? I thought we didn't do that. I believe most recently with Delgado, I believe, they found that the criminal review bar does prevent and challenge the factors. There are cases, of course, that a challenge on the merits of an asylum claim, the criminal review bar does not apply. So when there's a statutory bar or a weighing of the factors as far as a particularly serious crime calculus, it still applies to bar review of that claim. I see. Lastly, there's the CAT deferral claim, which there is no statutory bar to. And standard review would be compelling evidence. Yeah, I'm afraid I don't see much of a CAT claim. Any other questions? I will submit my time. Okay. We put two minutes on the clock, although you may not need it. All you need to do is say yes, let's mediate. Well, Your Honor, that was about to ask the court. I believe that this case does merit a mediation, and I believe during mediation, I've been involved in many of those before the mediators of the court. I believe that an issue could be narrowed, and specifically the application of the proper standard can be determined, because I believe even in the page 26 of the Respondent's Brief, they admit that under matter of CC, and I'm quoting from their brief, the board will apply matter of front and esco, only where the crime fall outside of the definition of aggravated felony. Since the issue here is, is it an aggravated felony? If that is not something the BIA has spoken on, either we should give an opportunity to actually make a ruling with a proper briefing under the changes, and if it's not, then matter of front and esco does require the agency to engage in a factual determination. And your position would be that it never engaged in the factual determination, and therefore the fact that there would be a bar if they did engage in the factual determination doesn't matter, a jurisdictional bar. Correct, because the IJ specifically found there is nothing changed, so there is a categorically the prohibition against asylum and withholding, and he pre-permitted the application. So there was never any factual determination as to the equity and to the underlying fact of the conviction. If the panel has any other questions, I can answer. Okay, thank you. We'll put that on order with respect to mediation. Thank you very much, Your Honors. Thank you. Thank both sides for your arguments.
judges: Fletcher, Paez, Berzon